11 SAUNDERS, Judge.
The only issue presently before us on appeal is whether the hearing officer erred in awarding penalties and attorney’s fees. We affirm.

FIRE FIGHTER’S REMEDIES

LSA-R.S. 33:2581, the Heart and Lung Act, specifically governing fire fighters, provides as follows:
Sec. 2581.
Development of heart and lung disease during employment in classified fire service; occupational disease. Any disease or infirmity of the 12heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment.
Acts 1968, No. 337, Section 1; Acts 1975, No. 30, Section 1. This provision has long been construed to provide remedies to fire fighters disabled by heart attacks. See, e.g., Vincent v. City of New Orleans, 326 So.2d 401 (La. App. 4th Cir.) (on rehearing), writ denied, 329 So.2d 760 (La.1976).
In addition, LSA-R.S. 23:1031.1(B) provides as follows:
Sec. 1031.1. Occupational disease
*897 [[Image here]]
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section. (Emphasis ours.)
The employer concedes that the foregoing emphasized language does not relieve it of sanctions, as § 10 of Acts 1989, No. 454, the legislation giving rise to it, explicitly states that “[t]he provisions of this Act shall not be construed to affect the provisions of R.S. 33:2581.” Rather, the gravamen of defendant’s argument is that, although LSA-R.S. 23:1031.1 and LSA-R.S. 33:2581 have remained intact, it should be relieved of sanctions because the 1990 legislation amending and reenacting LLSA-R.S. 23:1031.1 did not reiterate the language found in the 1989 legislation, supra. This legislation, Acts 1990, No. 943, clarified LSA-R.S. 23:1031.1 to unequivocally state that carpal tunnel syndrome is a compensable occupational disease. It otherwise left LSA-R.S. 33:2581 unaffected.
We are not convinced. First, an annotation directly below the provision, under the caption “Legislative Intent,” specifically quotes Section 2 of Acts 1990, No. 943: “The specification herein of carpal tunnel syndrome as an occupational disease is intended only as a clarification of the prior law.” (Emphasis ours.). Thus, we disagree with the premise of defendant’s first argument. Not only is there absolutely no indication the legislature sought to repeal the pre-existing law, Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610, 616 (La.1990), there is strong indication to the contrary. See generally, Liter v. City of Baton Rouge, 245 So.2d 398, 402-403 (La.1971).
Nor can we accept defendant’s theory that a “literal” interpretation of the cited statutes
supports its position. LSA-R.S. 33:2581 offers relief to fire fighters in an amount equal to those who “shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled_” (Emphasis ours.) Because defendant did not overcome the presumption below and does not belabor the point now, like the finder of fact we conclude that claimant is entitled to benefits in an amount equal to those granted benefits under LSA-R.S. 23:1031.1(B).
Thus, there is only one reasonable interpretation that can be found in LSA-R.S. 33:2581: It applies. Legislative repeals by implication are not favored. Thomas v. Highlands Ins. Co., 617 So.2d 877, 878 (La. 1993). Where there is no clear | indication of legislative intent to repeal, a specific statute will not be repealed by a general one. Green, supra, and cites therein. Therefore, defendant having conceded that prior law does not support its position, its argument falls on its own sword.

PENALTIES AND ATTORNEY’S FEES

Alternatively, the employer contends that it should not be cast for sanctions even if LSA-R.S. 33:2581 does entitle fire fighters to such benefits. It maintains that LSA-R.S. 23:1031.1(B), which generally excludes “heart-related diseases” from compensable occupational diseases, created a question of law it had every reason to pursue.
We remain unconvinced. This is no “novel” issue. Cf. Williams v. Regional Transit Authority, 546 So.2d 150, 161-162 (La.1989). Even assuming LSA-R.S. 23:1031.1(B) on first impression gives rise to questions as to whether benefits are due for claimant’s disability, defendant cannot be absolved for its convenient failure to look, beyond that provision for a truthful answer. A cross-reference following LSA-R.S. 23:1031.1(B) specifically refers the uncertain employer to LSA-R.S. 33:2581, which although technically not part of the Workers’ Compensation Act, has long been applicable to such eases involving fire fighters. McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2d Cir.1991); Saling v. City of New Orleans, 398 So.2d 1205 (La. *898 App. 4th Cir.), writ denied, 401 So.2d 986 (La.1981); Vincent, supra.
Finally, the result would not differ even were we not faced with laws whose meanings are so readily apparent, not only because our rules of statutory interpretation work against repeal by implication, but because of the nature of this controversy.
Certain rules have been fashioned to insure that benefits are not denied or Isterminated prematurely. The following rules govern a claim for compensation benefits that is refused on medical grounds.
“An insurer is required to make a reasonable effort to ascertain employee’s exact medical condition before benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). If, subsequent to an initial optimistic report, an insurer receives medical information indicating continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976).”
Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984).
Because it would be equally unfair to injured workers to permit employers to terminate benefits without first fully researching the law, we conclude that these standards are equally appropriate when an insurer refuses benefits on legal grounds. This is only reasonable, because ascertainment of whether a claimant is entitled to workers’ compensation benefits is a legal rather than a purely medical determination. Hopes v. Domtar Industries, 627 So.2d 676, 683 (La.App. 3d Cir. 1993), citing DeGruy v. Palo, Inc., 525 So.2d 1124, 1133 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988).

CONCLUSION

We hold that an employer who fails to make a reasonable effort to ascertain the law before terminating or denying an employee’s claim to compensation benefits cannot on that basis avoid statutory penalties and attorney’s fees. In the case sub judice, defendant at best failed to make every reasonable effort to ascertain the law before denying benefits. Having failed to do so, on this ground alone the hearing officer’s imposition of penalties and attorney’s fees cannot be described as clearly wrong.
IsThe judgment of the hearing officer is affirmed at defendant’s cost.[1]
AFFIRMED.

. Plaintiff has filed no answer to defendant's appeal requesting additional attorney's fees for efforts in connection with to these proceedings, so we cannot award any.