BROWN, CHIEF JUDGE.
| iMark Middlebrooks was a fireman with the City of Bastrop Fire Department for 19 years and seven months. On May 10, 2014, when he was returning home from work, he blacked out. Middlebrooks began having seizures two or three times a day and was subsequently diagnosed with a brain tumor, Grade III astrocytoma. He sought workers’ compensation benefits for a service-connected occupational disease as set forth under La. R.S. 33:2011, the Cancer Act. The Workers’ Compensation Judge (“WCJ”) denied the claim and Mid-dlebrooks’s wife[1] has appealed. For the following reasons, we reverse and remand.
Discussion
Middlebrooks’ tumor was removed by neurosurgeon Dr. Bernie McHugh on July 3, 2014. After the surgery, Middle-brooks was treated by oncologist Dr. Scott Barron. Middlebrooks was completely disabled from engaging in any employment at the time of the trial and was drawing Social Security disability benefits. Middle-brooks testified that his work with the Bastrop Fire Department exposed him to heat, smoke, fumes, and carcinogenic substances.
Middlebrooks sought workers’ compensation benefits under La. R.S. 33:2011, which affords firemen diagnosed with certain types of cancer who have completed ten or more years of service the benefit of a presumption of causation. The statute states that the cancer is presumed to have *1233 been caused |2by a fireman’s work. The statute also states that the presumption is rebuttable by evidence meeting judicial standards.[2]
The Act embodies the social policy of the state which recognizes that firemen are subjected during their career to the hazards of smoke, heat, and nauseous fumes from all kinds of toxic chemicals. The legislature recognized that this exposure could cause a fireman to become the victim of cancer (in this case, one originating in the brain) based upon a claimant’s occupation as a firefighter, and the presumption relieves the claimant from the necessity of proving an occupational causation of the disease. The presumption switches the burden of proof from the claimant to the employer and may be overcome by evidence meeting judicial standards that the disease neither developed during nor was caused by the employment. Rothell v. City of Shreveport, 626 So.2d 763 (La.App. 2d Cir. 1993), writ denied, 93-3191 (La. 02/11/94), 634 So.2d 379. Whether the presumption |3has been rebutted is a question of fact and the WCJ’s finding will not be disturbed in the absence of manifest error. Coats v. City of Bossier City, 31,164 (La.App. 2 Cir. 10/30/98), 720 So.2d 1283, writ denied, 99-0019 La. 2/12/99, 738 So.2d 581.
It is not disputed that Middlebrooks, who worked in the service, was entitled to the presumption. Evidence presented by defendant to rebut the presumption at trial included only a questionnaire sent from the City of Bastrop, through its third- party administrator, to Dr. McHugh, the neurosurgeon who removed Middlebrooks’ tumor. One of the questions asked, “Do you believe medically, that this condition is related in any way, to his being a firefighter?” It provided two spaces, one for “YES” and the other for “NO.” The space for “NO” was checked. No evidence was submitted to show that Dr. McHugh was given a description of Middlebrooks’ duties as a firefighter or what substances or conditions Middlebrooks was exposed to during his employment. No one sought to question Dr. McHugh further to determine the reasons for this conclusion.
Middlebrooks objected to this questionnaire based on lack of foundation, hearsay, and that it was not a medical record. The WCJ overruled Middlebrooks’ objection and allowed the written question and Dr. McHugh’s check mark to be admitted.
*1234 Middlebrooks submitted the medical records of Dr. Barron, his treating oncologist. Dr. Barron said of the type of cancer Middlebrooks had, “Etiology of such tumors (Grade III astrocytoma) is unknown, idiopathic, but there may be a genetic component as well as an increase incidence in patients with previous head trauma.”
|4The WCJ determined that the check marked answer of “NO” to the one sentence question was sufficient to rebut the presumption of causation and then, referring to Dr. Barron’s statement that “etiology of such tumors (Grade III astrocytoma) is unknown, idiopathic,” found that Middle-brooks was not able to show that his cancer was caused by his employment as a firefighter. The WCJ dismissed the case with prejudice and assessed all costs to claimant. Middlebrooks perfected the instant appeal.
Defendant argues that Dr. McHugh’s checking the “NO” space was sufficient to rebut the presumption, thereby placing the burden upon the claimant to prove that his cancer was caused by or resulted from his work as a fireman. Defendant argues that claimant was not able to meet that burden.
To reverse a fact-finder’s determination under the manifest error standard, an appellate court must engage in a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine that the record establishes a finding that is clearly wrong. McMillan v. City of Monroe, 47,700 La.App. 2 Cir. 1/16/13, 108 So.3d 869.
There is a paucity of cases regarding the Cancer Act.. However, La. R.S. 33:2581, the Heart and Lung Act, involves a similar presumption in favor of firemen who develop a disease or infirmity of the heart or lungs after having been employed as a fireman for more than five years. The Heart and Lung Act offers guidance for the Cancer Act.
In Richards v. St. Bernard Parish Government, 11-1724 (La.App. 4th Cir. 05/02/12), 91 So.3d 524, 528, writ denied, 12-C-1203 (La. 09/21/12), 98 So.3d 340, a Heart and Lung Act case, the court wrote:
|RWe recognized, and essentially reiterated, on rehearing [in Vincent v. City of New Orleans, 326 So.2d 401, 403 (La.App. 4th Cir. 1975) ] that “the force of the presumption” in favor of the employee is such that although “it is termed • rebuttable it is, in fact, almost impossible to rebut.” Vincent v. City of New Orleans, 326 So.2d at 405 (on rehearing). The employer “is placed in the difficult position of being obliged to prove a negative,” which is that the heart-related disease “could not have resulted from his service as a firefighter.” Id. But we concluded “that the statute cannot fairly be construed in any other way.” Id.
In Coats, supra, the fireman’s treating cardiologist testified via deposition that the fireman’s arteriosclerotic disease was likely started by his exposure to smoke. Defendant, the City of Bossier City, failed to offer expert medical testimony that the fireman’s condition did not develop during and as a result of his work as a firefighter. Id. The WCJ and this Court agreed that evidence was insufficient to rebut the presumption that the fireman’s heart disease was caused by his work and this Court affirmed the WC J’s decision. Id.
In City of Bossier City v. Colvin, 45,278 La.App. 2 Cir. 5/19/10, 36 So.3d 1207, another Heart and Lung Act case, Bossier City offered medical evidence in which the experts said that they were unaware of any correlation between firefighting and heart disease and offered no opinion on what caused the fireman’s heart disease. This Court found such expert medical evidence insufficient to rebut the presumption *1235 stating, “[T]he expert medical testimony was essentially neutral as to causation.” Colvin, 36 So.3d at 1212. This Court found that the WCJ did not commit manifest error in finding that Bossier City had not sufficiently rebutted the presumption. Id.
Here, Dr. Barron’s statement that “Etiology of such tumors (Grade III astro-cytoma) is unknown, idiopathic, but there may be a genetic component as well as an increase incidence in patients with previous head trauma” unessentially neutral as to causation. Dr. Barron does not link Mid-dlebrooks’ tumor to his work as a firefighter, but states only that there is no known cause for such tumors, and then offers two possible sources, neither of which is related to claimant’s work.
We find that the employer was unable to overcome the Act’s presumption despite the offhand, unexplained opinion of Dr. McHugh. The medical opinion did not rule out “that a job or lifestyle could be an aggravating factor in an existing disease.” Thus, we find the physicians’ opinions “insufficient to overcome the presumption.” Dr. McHugh is a neurosurgeon experienced in treating brain cancer and as such, could have offered credible medical evidence as to whether Middlebrooks’ cancer was work-related. Neither party chose to depose Dr. McHugh to determine the reasoning behind the “NO” checkmark that the cancer was not work-related. Considering Dr. Barron’s statement there should have been a third choice, “DON’T KNOW.”
In a Heart and Lung Act case, this Court found that the administrative hearing officer had erred as a matter of law in applying the Act’s presumption and reversed the decision to deny benefits to a retired firefighter who suffered a heart attack where “[t]he evidence presented to the hearing officer is very detailed about the other factors, major and minor, which did or could have contributed to Rothell’s heart attack.” Rothell, supra, at 767. The Court explained that “[hjowever, there is no evidence which states that the employment did not precipitate, accelerate, aggravate, or otherwise cause or contribute to Rothell’s atherosclerosis which caused the heart attack.” Id. (Emphasis in original). The Court further noted that 17“[e]ven Dr. Brown agreed that he could not exclude stress as having played some role in this case.” Id.
This Court also reversed an administrative hearing officer’s denial of benefits in a case where “the medical opinion (more probably than not), that generally negates that the fireman’s work was the cause of the heart disability, is tempered by acknowledgments, agreements, or concessions that the work may have been a cause, even though remote, or possibly a contributing factor.” McCoy v. City of Shreveport Fire Dept., 26,181 La.App. 2 Cir. 1/25/95, 649 So.2d 103, 108. (Emphasis in original). Because the Act requires the employer to prove that the heart disease “could not have resulted from his service as a fireman,” the Act’s presumption is not overcome when the physician is unable or unwilling to totally rule out that the heart disease is related to the firefighter’s job.
Defendant argues that this case is similar to Gilliland v. City of Monroe, 42,458 (La.App. 2 Cir. 10/10/07), 968 So.2d 270, 274. In Gilliland, this Court found that the legal presumption contained in the Act is an evidentiary presumption, bringing into play Code of Evidence Articles 301, et seq., which define the foundation, weight and other effects of such presumption. Further, this court stated:
There being no conclusive presumption given by the Act, dictum in the jurisprudence of the “almost impossible burden of proving a negative” does not accurately comport with the evidentiary considerations that were before the WCJ after *1236 the clarifying 1997 legislation in Articles 304 and 306 providing for the evidentia-ry treatment of rebuttable presumptions. That dictum in many of the cases was expressed in a context where the fireman was disabled by the manifestation of the heart or lung disease during employment or immediately after retirement. Yet, with the passage of time after termination of work as a fireman, controverting evidence, circumstantial or otherwise, can arise that may alter the evidentiary equation allowing the statutory classification of the diseases as inferentially occupational to be overcome.
|sIn Gilliland, there was extensive medical testimony, and the claimant had been retired several years before the manifestation of the disease. In Middlebrooks’ case, no one chose to take Dr. McHugh’s testimony, and Middlebrooks was still working as a fireman when the disease became manifest.
In the case sub judice, the single “NO” answer does not address its foundation or Dr. Barron’s “DON’T KNOW” option. The Third Circuit found that the unrebutted medical evidence of several cardiologists that a firefighter’s work had not contributed to his condition was insufficient to overcome the Act’s presumption because the same physicians testified that the cause of the firefighter’s condition was “unknown.” See Meche v. City of Crowley Fire Dept., 96-577 La.App. 3 Cir. 2/12/97, 688 So.2d 697, 702, writ denied, 97-0632 La. 4/25/97, 692 So.2d 1088. The court in Meche characterized the cardiologists’ testimony as “equivocal,” concluded that the employer had not sustained its burden of proving by affirmative evidence that the employment had not contributed to the firefighter’s condition, and reversed. Id. The court expressed the view that the presumption is “almost irrebuttable,” but that “this was the obvious intention of the legislature when it drafted the Heart and Lung Act.” Id.
When the physician’s “testimony does not exclude the possibility that plaintiffs disease developed over a period of years and does not clearly establish that plaintiffs employment had nothing to do with the development of his heart disease,” the employer fails in its burden to rebut the Act’s presumption. Attaway v. City of Natchitoches, 94-813 La.App. 3 Cir. 2/1/95, 651 So.2d 306, 308. See also Devall v. Baton Rouge Fire Dept., 07-0156 La.App. 1 Cir. 11/2/07, 979 So.2d 500.
|flThe WCJ’s choice to credit the simple check mark was manifest error.
Conclusion
For the reasons expressed above, the judgment of the WCJ is reversed, and the matter is remanded for the rendering of a judgment in accord with this opinion and the law. Further, the WCJ should consider and rule on the issue of attorney fees and costs. All costs are taxed against defendant, City of Bastrop.
Reversed and Remanded.

. Middlebrooks died on April 28, 2016, during these proceedings and his wife, Lisa, has continued pursuing his claim.

. The Cancer Act, La. R.S, 33:2011, states:
A.Because of exposure to heat, smoke, and fumes or carcinogenic, poisonous, toxic, or chemical substances, when a firefighter in the classified service who has completed ten or more years of service is unable to perform his regular duties in the fire service in this state by reason of a disabling cancer, such cancer shall be classified as an occupational disease or infirmity connected with the duties of a firefighter. The disease or infirmity shall be presumed to have been caused by or to have resulted from the work performed. This presumption shall be re-buttable by evidence meeting judicial standards, and shall be extended to a member following termination of service for a period of three months for each full year of service not to exceed sixty months commencing with the last actual date of service.
B. The disabling cancer referred to in Subsection A shall be limited to the types of cancer which may be caused by exposure to heat, smoke, radiation, or a known or suspected carcinogen as defined by the International Agency for Research on Cancer. The disabling cancer shall also be limited to a cancer originating in the bladder, brain, colon, liver, pancreas, skin, kidney, or gastrointestinal tract, and leukemia, lymphoma, and multiple myeloma.
C, The affected employee or his survivors shall be entitled to all rights and benefits as granted by state law to which one suffering an occupational injury is entitled as service connected in the line of duty.